Here are the next case on the calendar, Roberts v. Weight Watchers. Good morning, Your Honors. Good morning. May it please the Court, my name is Samuel Rosen of the firm Harwood Pfeffer, representing Mr. Roberts and the proposed class in this action. Mr. Roberts subscribed to Weight Watchers' then-online program in September of 2015. On Thursday, November 26, 2015, Thanksgiving Day, Weight Watchers prematurely updated that online program through an unfinished new program called Online Plus. From that Thanksgiving Day until at least March 17, 2016, the day before the complaint was filed in the Southern District, Mr. Roberts and a vast number of Weight Watchers subscribers How many subscribers are there? A million and a half, Your Honor. And what's the amount of the subscription? $19.95 a month. Could you help me with this? The subscription agreement, as I understand it, and this is straight out of, this is a quote, paragraph 17, that's in the appendix at 43, says, and I'm quoting, the products, offerings, content, and materials, including, without limitation, the fee-based products on the website are provided as is. Help me understand how you read that phrase to exclude the words as is. I exclude the words as is from the website. The website is stated separately from the products that are the fee-based products on the website. And among the fee-based products is the online program. Those are the items that are as is. It's not the website itself. And it's getting on to the website that became impossible after the changeover. But wouldn't the as is clause still apply to the mobile application of Online Plus? The as is clause applied to the program that was in place when the subscription agreement was signed. When the program was changed, as was the case in the micro-bill decision that we cited, you couldn't have a changed website that didn't work. You couldn't have a mobile app that didn't work and say, okay, fine, this is from the as is clause before. Isn't the Online Plus defined to be one of the fee-based products? Yes, it is. But you still couldn't get on to the website. When they changed the online program, the website became unusable to a great number of the subscribers. So you couldn't get to it. By changing the Online Plus program, it seems to have affected the website to make it impossible even to get on to it. So it's the website that was affected by changing to the Online Plus program. And one remedy is to terminate the subscription. Is that correct? That's one of the remedies that Weight Watchers has put into the agreement. Arguably, that's the only remedy. But why didn't you pursue that remedy? Because coming right at the end of the year, Mr. Roberts and, as noted by a number of the other subscribers, wanted to continue, tried to continue. Some couldn't even get on to terminate, as was noted in some of the blog postings that we included to show how bad the program was. But by changing the program, the subscribers were put into the position of someone who, as in the Cassese case that we cited, they had no input or knowledge about the change of the program. They couldn't have known of the problems. It wasn't an ongoing program that had glitches. It was a new program. They couldn't do anything to correct the situation. They knew nothing about the changes that the company was making. So they were in a position where they could either try and terminate, spend time terminating. There would be no—even if they terminated, they would still be charged for the period during which the program didn't work, during which they couldn't get onto the website. And as the Court said in the Cassese case, there was no way that the owners there could know that the house was built on an improper foundation. Here there was an improper foundation that was provided to the subscribers. The warranties that the builders sought to exclude in the Cassese case were similar to the warranties that they were trying and the limitations that they tried to make here. There was no chance that they had to know that the program would be deficient. They had a going program. You make a claim of intentional breach or bad faith breach here. You concede in your reply brief that you didn't raise it below. But then you say, that's okay, we can still consider it because it's a matter of law. It's just a legal issue. How is it just a legal issue whether somebody engaged in bad faith? The complaint alleged that they didn't follow proper procedures. The complaint alleged that they purposely did this during the holiday season. The complaint alleged that their failures were such that they were forced to apologize but did nothing more. That makes it a purely legal issue? The factual questions will be whether it was given the word intentional, whether it was given any legal terms as to their state of mind. I misunderstand you. Don't you concede it wasn't raised below in the complaint, this intentional breach of contract or bad faith breach of contract? Do you now claim it was raised? What was conceded was using the words intentional below. But the conduct that we are arguing was intentional was stated in the complaint. And the language permits the argument, I believe. The language permits the argument that what they did was intentional. There's no changing any facts of what we've pled. There's no changing any of the details of what they did. The fact that they apologized numerous times but gave no recompense or refund to any of the subscribers. All indicates that that can bring us into the exception from the rule that we state in the brief. Thank you. You'll have three minutes in response. Thank you, Your Honor. Good morning, and may it please the court. Amy Saharia of Williams and Connolly on behalf of Appley Weight Watchers. If I may, I'd like to discuss the two independent grounds on which the district court dismissed plaintiff's claim. The first being the numerous disclaimers of warranty that are in the party's contract, all of which are set forth in Section 17. Could I, along those lines, ask you this? So, as we know, the As Is Clause pertains to, and I quote, products, offerings, contents, and materials, dot, dot, dot, on the website. So why should we read this to cover the mobile application, which provides an, as I understand it, an independent access point? Two reasons, Your Honor. The first is that in the proceedings below, plaintiff never argued that for purposes of the contract, there is a material distinction between the website and the mobile app and conceded that the two should be read to be the same thing and hasn't raised that argument here. But the second being that Online Plus is a product that plaintiff claims we had an obligation to provide him access to, and you can access it through two ways, the website and the mobile app. And his fundamental claim here is that he was unable on one day, on two occasions, to access Online Plus, and there's no dispute that Online Plus is a fee-based product. And therefore, the As Is Clause applies indisputably to Online Plus, which is the program he claims he was unable to access through the mobile app. And with respect to the disclaimer of warranty provisions, there are four disclaimers, and plaintiff has only argued this textual argument as to one of them. He has no textual response to the remaining three of those disclaimers, which apply squarely to his claim in this case. Let me just understand, Ms. Zaharia, the implications of what I think you're asking us to do, although maybe we don't have to do it in the context of this particular case. But what if the Weight Watchers company failed to provide any service at all? Or what if the Weight Watchers failed to correct a defect for a year or two or three? Is it your position that the disclaimers would protect Weight Watchers? I think it's important to distinguish between a situation where Weight Watchers knowingly fails to provide a product. We concede that Weight Watchers had an obligation to provide access to its website and those programs. So if Weight Watchers said, we have a website, we are simply not going to provide you with access to it anymore, I think that would be tantamount to a termination of the subscriber subscription, and under the contract there is an obligation on Weight Watchers to provide a partial refund in that circumstance for that pro-rata period in which no access was provided. So I do agree that if there was an intentional decision not to provide access to the website — Or how about just negligence? Well, that is the risk that Plaintiff undertook when he agreed to the disclaimers. Negligence for some prolonged period of time. I'm just trying to understand the parameters. Sure. So I think it's important to keep in mind that Weight Watchers gave Plaintiff and its subscribers the unqualified right to terminate at any time, and the most they would be out of pocket is simply one month's fee. So if Weight Watchers was unable to correct a defect for some prolonged period of time, say one year, two years, you would expect that any rational subscriber would terminate his subscription and not continue to pay for a product that is defective for two years. Well, that's what I ask your adversary, but, you know, some people want to pursue whatever they want to pursue. Sure. Well, I think it's important to keep in mind that with respect to this case, of course, that is not what Plaintiff has alleged. Plaintiff alleges with respect to himself that only on one occasion, or on two occasions over the course of, I think, one hour of chatroom conversations, he was unable to access the product. Although in their brief, in his brief, Plaintiff makes assertions that there was no service. That's simply not what he alleges here, and I think it's important to look at the complaint itself to figure out what this case is actually about. As I mentioned, Plaintiff has no textual response to three of the four disclaimer provisions. He instead offers arguments to get around those provisions, the first being that the court should imply a duty of good faith in their dealing that would require Weight Watchers to use some sort of industry best standards in releasing its website. But, of course, it's axiomatic that courts cannot construe duties of good faith that are inconsistent with disclaimer of warranty provisions like the ones here. The second argument he makes is that the contract is illusory if the court were to apply those disclaimers according to their plain terms. Again, that argument was rejected by the district court because the contract does impose on Weight Watchers the duty to provide access to its website. As I indicated earlier in response to Your Honor's question, if Weight Watchers were simply to refuse access to its website, it would owe a refund to those customers, and that is a duty that is imposed under the contract, and therefore it's not illusory. If I may turn to the second ground, which are the independent limitation of liability provisions, as Judge Droney indicated, the only argument that Plaintiff is making to this court is one that he did not make below. In fact, I would point the court to footnote 5 of Judge Kotal's opinion in which he expressly noted that Plaintiff had not raised any argument in that court that the limitation of liability provisions are unenforceable as a matter of public policy. Even if this court were to exercise its generous discretion to consider that argument for the first time on appeal, there is simply no allegation anywhere in the contract that would support a reasonable inference that Weight Watchers acted with the sort of tortious intent that is required to overcome a limitation of liability provision. In fact, the entire premise of Plaintiff's complaint is to the contrary. It is that Weight Watchers poorly planned the release of its website, that it failed to implement emergency management procedures, and that the release of the website was chaotic, not that it was safe. In the second claim though, the state law allegation says that Weight Watchers' conduct with respect to the failure of Online Plus constitutes deceptive and misleading acts and practices. Weight Watchers deceived Plaintiff and the other class members by marketing Online Plus as being a working system when it was not. Are those allegations of bad faith or intentional breach? I would argue that those type of allegations are legal conclusions and the nature that the Iqbal Court said a court is not required to accept at face value, that are required to be supported by plausible factual content, and there's no factual content whatsoever in the complaint that would support those conclusions, which is no doubt why Plaintiff voluntarily dropped that claim in the proceedings below. Unless the Court has further questions, we urge you to affirm the decision below. Thank you. Mr. Rosen, you will have three minutes. Thank you, Your Honor. Let me just quickly get past one point. Mr. Roberts does not allege it was one day that he had a problem on March 17th. It was from the beginning. When he first filed his complaint on January 7th in state, January 7th, 2016, in state court, then the case was removed to federal court. From the beginning, he states in paragraph one, he states that he and others were damaged by the conduct. It's not just March 17th as Weight Watchers contends. Was the argument that the subscriptions agreements limitations on liability should not be enforceable raised below? Yes, Your Honor. In fact, at the argument below, Weight Watchers counsel said, so I don't believe you'll find a case where this is a disclaimer of warranty that says you're receiving the whatever it is you're receiving, here it's a service. It could be a used car as is. You can't say, well, but there's an implied duty that you're going to fix it if it doesn't work right. Well, yes, you can. The Cassessi case said that. You can attempt to limit your liability, but we're not going to enforce that limitation because you, the home builder, here the website builder, have done something of which only you are aware. There's no way your subscribers could have been aware. Sure, they could have, if it were an ongoing website and an ongoing program, all those implied warranties, all those limitations of warranty remain in place. But what's the subscriber to do other than try and get his money back? Some of them lost information that was on the website. It was the holiday season that they did it. Someone who wrote to a blog said they're using us as guinea pigs. It's as if they used, and we allege- You answered your question when you posed the question, other than try to get their money back. That's, you end the subscription and you try to get a refund. Try to get your money back and try to get the information back that they've lost. They have said that we lost information, we're trying to get it back. It was so bad that people's recipes, their programs, their personal programs were lost. And even if they got their money back, that wouldn't have been any recompense for a number of them who had been with Weight Watchers for however long they had been with them. Thank you. Thank you, Your Honor. Thank you both for your arguments. The court will reserve decision.